IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ELECTRICAL CORPORATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 04-0718-CV-W-HFS |
| KANSAS CITY, MISSOURI, et al., | ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| MARK ONE ELECTRIC COMPANY, INC., | ) ) ) | |
| Intervenor. | ) | |

**MEMORANDUM AND ORDER**

This litigation was filed to challenge the operation and validity of an affirmative action program of Kansas City, Missouri, objecting particularly to the preference given through certification of Mark One Electric Company, Inc. ("Mark One"), a competitor of plaintiff ("ECA"). The current certificate, which expires June 17, 2005, qualifies Mark One as an enterprise owned and operated by women that purportedly also meets the small business standards specified by the ordinance. Mark One is too large for an electrical company certificate, however, but is treated as being qualified as a "general contractor", with specialized work entitlement continuing despite the extent of its business.

Plaintiff launched a full-scale Adarand-type attack on affirmative action as such, under Federal Constitutional law,[1] but has now filed a Second Amended Complaint that also asserts a State law violation of the standards for size adopted in the City ordinance. Plainly erroneous administration of the program is asserted. The certificate was issued by Michael D. Bates, formerly Director of Human Relations of the City; his successor, Acting Director Mickey Dean, now sides with plaintiff and does not expect to recertify Mark One. Mark One has intervened, and strenuously defends the Bates interpretation of the ordinance.[2]

Prior to the most recent amendment, the court held a preliminary injunction hearing, but at the court's direction the issues were limited to the size-standards controversy under the ordinance. I now deny a preliminary injunction but will summarily grant ECA's motion seeking a declaratory judgment in favor of plaintiff on the size-standards issue.

There is no basis in the evidence to characterize Mark One as primarily or essentially a "general contractor". I am satisfied that under Small Business Administration regulations that the City ordinance refers to as controlling Mark One has been and remains primarily an electrical contractor, ineligible for certification for preferential treatment in contracting for such work because it has an annual volume of business exceeding $12 million.

---

[1] Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995). The latest round in that Denver controversy on this subject appears in Justice Scalia's dissent from denial of certiorari in Concrete Works of Colorado v. City and County of Denver, 540 U.S. 1027 (2003).

[2] It is arguable that this case is quickly becoming moot, as between the City and plaintiff. It is very much alive, however, as a controversy between the competitors and will likely mutate into one between the City and Mark One.

2

A.  Preliminary Injunction

ECA brought this suit to completely stop the City's use of its affirmative action program in contracting.  By reason of the court's restriction on ECA's presentation, any Constitutional challenge is so far factually undeveloped.  Therefore a summary denial of interim injunctive relief would be required at this time.  Moreover, the immediate thrust of the case is to get Mark One decertified, so that ECA will be unimpeded in its attempts to receive contracts.  The Mark One certification is expiring next month, and there is testimony, briefing and argument by the City to the effect that Mark One will not be recertified.  The issues presented are thus largely mooted by the City's change of stance.  It is unclear, moreover, that any contracting activities between now and June 17 would involve bids for electrical contracting subject to the ordinance.[3]  Although I conclude that ECA will prevail in its interpretation of the ordinance and in its claim that the Bates interpretation is legally unsound, the interests of federalism and of normal judicial deference to executive discretion favor caution in mandating municipal activities, even preliminarily.  It is not necessary to parse Eighth Circuit law regarding the issuance of a preliminary injunction, as set forth in <u>Dataphase Systems, Inc. v. C.L. Systems</u>, 640 F.2d 109 (8th Cir. 1981 (en banc)).  A preliminary injunction should be denied at this time, without prejudice to renewal of the motion if and when the City should recertify Mark One, contrary to the declaratory judgment that will be entered here and contrary to the court's understanding of Mr. Dean's current intentions.

---

[3]ECA attaches to its final brief material tending to show that bid information for the electrical portion of the Downtown Sprint Arena will be submitted by June 8, 2005.  Assuming this is treated as part of the record, it seems doubtful that an expiring certificate that is here ruled unlawful would still be influential.  Further, the court's jurisdiction to give effect to a declaratory judgment presumably may be invoked.

3

B. Declaratory Judgment

The court has pendent jurisdiction over ECA's State law claim, asserted in Count IV of the Second Amended Complaint. As Mark One argues, there are issues as to ECA's standing to serve as a litigation surrogate for Mickey Dean, in support of his current interpretation of the ordinance. I believe I have discretion to proceed, and to give the parties the practical assistance of my conclusion, which may be useful in further state court litigation that may ensue. My views of Missouri law are entitled to no deference except for the time spent in hearing the case and considering arguments and briefing.[4]

On March 7, 1996 the City Council of Kansas City passed Ordinance 960063, amending Article II, Chapter 38 of the Code of Ordinances entitled "Civil Rights Ordinance of Kansas City, Missouri." That municipal legislation established a Disadvantaged Business Enterprise Program, a form of affirmative action program, under which disadvantaged business enterprises could become certified by the City to receive special consideration as general contractors and subcontractors for City-related projects As currently amended the ordinance applies to minority business enterprises (MBE) and women's business enterprises (WBE), the latter being described as for-profit business concerns that, among other things, "meet the size standards imposed by 13 CFR 121.201". Municipal Code Section 38-84. Section 38-100.2 (5)(a) allows the certification of an eligible MBE or WBE that is an "existing small business". It further provides in same subparagraph (5), "Business

---

[4] The suggestion that the case be certified to the Missouri Courts, while appealing, is barred by the view of the Missouri Supreme Court that responding would v iolate the rule against issuing advisory opinions.

4

Size Determinations", that "the director shall apply current SBA business size standard(s) found in 13 CFR part 121.201 appropriate to the type(s) of work the firm seeks to perform." The language is mandatory and does not afford much administrative discretion, other than to place in effect SBA policies.

The cited federal regulation divides businesses according to their type of work. For electrical construction work, a trade specialty business, an enterprise is not considered to be small unless its annual sales, averaged over three years, are less than $12 million. By contrast, a general contractor with gross revenues under $28.5 million is classified as a small business concern.

As stated by Mark One in its trial brief, there is evidence that in the construction industry general contractors have often emerged from the subcontracting community or specialty trades. Mr. Bates, being concerned that there was a shortage of MBEs and WBEs engaged in general contracting, sought to encourage such activity by certifying specialty contractors seeking to grow into general contractors. He and they anticipated that any transition would be gradual, and that specialty contractors would continue in their historic roles without losing the size standards applicable to general contracting.

However well motivated this method of certification may have been, it is clearly inconsistent with common understanding and with the regulatory scheme of the Small Business Administration. There is nothing in the ordinance that fairly permits the director to use a "wish list" in certifying businesses. It is true that the language does refer to the "work the firm <u>seeks</u> to perform". This surely refers to realistic expectations for the use of certificates during the period of issuance, not long-term goals or ultimate objectives. Any practice to the contrary would frustrate the stated objective of the ordinance and the regulations, confining advantages (such as loans or preferences)

to truly small businesses. "Infant industries" were to be favored, to use terminology applied in the early history of tariff legislation. Once an electrical corporation outgrows the volume established for classification of a small business it necessarily loses its artificial advantage.[5]

Mark One urges judicial deference to an administrative interpretation of the ordinance that the Director of Human Relations has the duty to enforce, and which he has had a good deal of experience in enforcing. In many instances a close issue of interpretation would be decided in a deferential manner. In this case, however, the current Acting Director apparently reads the ordinance differently. The initial reading is not necessarily sound. More compelling, however, is the acknowledgment by Mr. Bates that his reading was result-oriented rather than objective and "legalistic". He wanted to keep Mark One and similar growing enterprises qualified, and wanted to get them qualified as general contractors. While this objective may have served to encourage diversity, a central feature of the ordinance, it disregards the equally binding provision favoring "sink or swim" competition for companies that reach a specified level of revenues.

While not necessary to my decision, I note that the SBA regulations themselves base classification on the "primary industry" in which an applicant is engaged. 13 CFR 121.107. I find another reference in the regulations to the work in which a company is "primarily engaged". 13 CFR 121.301. In this case there can be no question that a company that retains "electric company" in its name and on its trailers is an electric contractor for small business classification, especially in

---

[5] My reading of the pertinent language is not affected by any impression I may have as to sound public policy. The City Council is free to expand the definition of small businesses in any way it may be persuaded is desirable. If the SBA regulations are deemed to be unduly confining, the Council could, for instance, provide that the SBA formula should be doubled or tripled. An amendment of the ordinance could also be adopted if the court's reading creates administrative difficulties in the Department of Human Relations. The advantage of legislation over litigation is that it is often rather quickly achieved as well as being flexible and democratic.

the absence of evidence (as I remember it) that Mark One has acquired significant experience as a prime contractor.[6]

\* \* \*

The above analysis is dispositive, but I review some aspects of the record of the hearing, and of Mark One's procedural argument that litigation is premature in the absence of exhaustion of administrative remedies. No such remedies have been persuasively identified, and no exclusive recourse to extrajudicial proceedings can be found in Missouri law generally or in municipal law for the City of Kansas City. Some arguments for staying out of court appear to be frivolous. For example, there is a contention that ECA should have recourse to a Department of Transportation procedure that has not yet been put in place. Further, ECA is not charging the City with "discrimination", simply violation of its ordinances, and there is thus no occasion to invoke the procedures of the Missouri Commission on Human Rights. The testimony regarding the Kansas City Star project is in conflict and somewhat confusing. Even if I assume that ECA has missed an opportunity to challenge Mark One's role in that project this does not affect the issue of future certification that is here being litigated.

With respect to the evidence, Mark One contends that ruling for plaintiff would interfere with ordinance interpretations relied on by Mark One and other contractors. No law has been presented barring an executive branch official such as Mr. Dean from correcting a misinterpretation of law by his predecessor. There is no vested right in a rule of law, barring change by legislation or

---

[6] There is also no evidence that Mark One's primary business, in volume or otherwise, is in outside work, such as construction of power lines. I leave open the question of dual certification, for companies that currently seek to perform multiple specialities. The quota for preferential treatment for each specialty would necessarily apply.

7

administrative reinterpretations. It is not persuasive, moreover, to contend that Mark One's growth was induced by the City, rather than its own attempts to prosper.

Very little testimony presented at the hearing was pertinent to the issues of semantics that are here dispositive. For instance, the testimony of Paul Rodriguez, certified as an MBE, does not show aspirations to be a general contractor or experience as a prime contractor. On the New York Life project where he had a joint contract or joint venture with another company, J.E. Dunn was the prime or general contractor. Tr. 127. Although Rodriguez says he applied to do "general construction" this only signifies that he sought to participate in a variety of specialty activities (Tr. 124). Whatever complications in certification will result from the ruling here, the Rodriguez activity does not directly compare with what occurred here. My ruling that Mark One cannot properly be certified as a general contractor, on the record before me, has no direct effect on the Rodriguez business.

The Armando Diaz testimony does appear to present parallels with the ruling here in that he has a certificate as a general contractor, but apparently his work as a general contractor has been rather limited. Tr. 141, 143. His size problem apparently arises from masonry work performed in a broad geographic region. From the testimony he may have been mistakenly certified as a general contractor, contrary to the Small Business Administration's regulatory scheme. The City points out that he is no longer certified for MBE status as a masonry contractor.

It is therefore ORDERED that plaintiff's motion for a preliminary injunction is denied without prejudice. It is further

ORDERED that plaintiff's motion for summary judgment is granted, declaring the certification of Mark One Electric Company, Inc., as a general contractor is erroneous and further

8

declaring, on the undisputed material facts before the court, that Mark One should be classified as an electrical contractor, subject to the $12 million gross receipts standard for certification as a small business enterprise.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

May 24, 2005

Kansas City, Missouri

9